```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA,

                    Plaintiff,                          **NOT FOR PUBLICATION**
                                                        **MEMORANDUM & ORDER**
        -against-                                       11-cr-506 (CBA)

BRANDON MEJIAS,

                    Defendant.
----------------------------------------------------------------x
```
AMON, Chief United States District Judge.

On October 20, 2011, the Court heard argument on the defendant's motion to sever Count One of the indictment, and his motion to suppress his post-arrest statements. The Court denied both motions, and will further explain here the basis for its ruling.

### I.  The Motion to Sever

Defendant Brandon Mejias has been indicted on one count of unlawful firearms trafficking, in violation of 18 U.S.C. § 922(a)(1)(A), and four counts of being in possession of firearms after being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Mejias moved pursuant to Rule 14 of the Federal Rules of Criminal Procedure requesting a separate trial for the firearms trafficking count, due to the risk of unfair prejudice from the admission of his criminal conviction history.

Rule 8(a) of the Federal Rules of Criminal Procedure provides for the joinder of offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Joinder is therefore proper when the same evidence may be used to prove each count, United States v. Blakney, 941 F.2d

1

114, 116 (2d Cir. 1991), or if the counts have "a sufficient logical connection to warrant joinder in a single trial," United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990).

Even where Rule 8 permits joinder, however, Rule 14 provides in relevant part that "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. Proc. 14(a). Given that Rule 8 "authorizes some prejudice" in the interest of judicial economy, "a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." United States v. Amato, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted). A defendant is not entitled to severance "merely because [he] may have a better chance of acquittal in separate trials." Zafiro v. United States, 506 U.S. 534, 40 (1993). Moreover, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id. at 539.

In denying the motion to sever, the Court takes guidance from the Second Circuit's most recent case on this issue, United States v. Sullivan, 2011 WL 4336632 (2d Cir. Sept. 16, 2011), which held that it was not error for the district court to join several narcotics counts with a felon-in-possession count. In this case, the Court believes that the facts support joinder even more than those presented in Sullivan.

First, the requirements of Rule 8 are easily met, as there is a strong logical and evidentiary connection between the offenses. The gun trafficking and felon-in-possession charges arise out of the same course of conduct, and the facts underlying the two offenses are closely intertwined. Severing the trials would essentially require duplicating the evidence and witness testimony in their entirety.

2

The Court also does not believe that the risk of prejudice is substantial enough to require severance under Rule 14. The Sullivan court rejected both the "contention that a felon-in-possession charge must always be severed from other charges" and any reading of United States v. Jones, 16 F.3d 487 (2d Cir. 1994) that would establish such a rule. Sullivan, 2001 WL 4336632, at * 6. Rather, the court held that where there is a strong Rule 8 connection between the offenses, the trial court gives proper limiting instructions, and there is no other indication of unfairness or substantial prejudice, "a district court may exercise its sound discretion in denying a motion to sever a felon-in-possession count from other charges for trial." Id.

Here, as in Sullivan, the combined charges simply "reflect the full scope of [the defendant's] criminal conduct," and the Court believes that any risk of prejudice can be alleviated by appropriate limiting measures. For example, the jury may be informed that Mejias has a prior felony conviction without any mention of the underlying facts. Further, the Court may instruct jury members that they shall not consider this conviction for any purpose other than for the fact of its existence, as relevant to the felon-in-possession counts.

The motion to sever is therefore denied. The Court will not at this time order bifurcation of the jury deliberations, as requested during oral argument, but the defendant may renew his application for additional precautions closer to trial.

## II. The Motion to Suppress

The defendant also moved to suppress his post-arrest statements to federal agents, arguing that the statements were induced by promises of leniency and were therefore involuntary. During oral argument, the defendant affirmed under oath that the facts contained in his attorney's affidavit are an accurate description of the post-arrest events. Accordingly, the Court does not believe that a hearing is necessary on the suppression issue, because there is no

3

disputed issue of material fact; that is, even crediting the defendant's version of the events, suppression is not warranted.

The defendant's motion alleges the following facts: On June 16, 2011 Mejias was arrested pursuant to an arrest warrant and taken into custody by federal agents. Once in custody, Mejias was brought to a conference room where one of the agents informed Mejias that if he cooperated, the agent would recommend to the prosecutor that he receive leniency in his sentence. After Mejias asked some questions about the consequences of cooperation, the agent called AUSA Nathan Reilly, who told Meijas over the phone that if he cooperated, the AUSA would recommend to the judge that he receive leniency. AUSA Reilly told Mejias there was a "high likelihood" that the judge would grant such leniency. Mejias was administered his Miranda warnings, and he signed a Miranda waiver before giving an electronically recorded statement to the agent. At the beginning of the statement, the agent asked if he had made any threats or promises to Mejias, to which Mejias responded, "No threats . . . I guess no promise." The agent then stated that he could not make any promises that cooperation would lessen Mejias' sentence, and explained that Mejias did not "have to" give any statements and could "stop doing this at any time if [he] want[s] a lawyer present." Mejias then stated that he would talk to the agent "for the purpose of a recommendation to the U.S. Attorney" and the agent responded that he would tell the U.S. Attorney that Mejias was truthful with him. The government stated during oral argument that it was determined later, after further proffer sessions, that Mejias' cooperation would not in fact be fruitful.

The voluntariness of a confession must be assessed based on the "totality of the circumstances." United States v. Orlandez-Gamboa, 320 F.3d 328, 333 (2d Cir. 2003); Green v. Scully, 850 F.2d 894, 901 (2d Cir. 1988). The court must consider "(1) the characteristics of the

4

accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." Id. at 901-02. It is well-established in this circuit that "[g]enerally, promises of leniency will not render a confession involuntary," United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995), and are "just one factor to be weighed in the overall calculus" in assessing the totality of the circumstances, United States v. Gaines, 295 F.3d 293, 298 (2d Cir. 2002). See also United States v. Guarno, 819 F.2d 28, 31 (2d Cir. 1987) ("[A] confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials. So long as the characteristics of the suspect and the conduct of the law enforcement officials do not otherwise suggest that the suspect could not freely and independently decide whether to cooperate or remain silent, a confession made pursuant to a cooperation agreement is not the product of coercion"); United States v. Egipciaco, 389 F. Supp. 2d 520, 526-27 (S.D.N.Y. 2005). It is also true, however, that "[m]aterial misrepresentations based on unfulfillable or other improper promises might perhaps overbear a defendant's will." United States v. Ruggles, 70 F.3d 262, 265 (2d Cir. 1995).

The defendant's only allegation of coercion in this case concerns the statements regarding future recommendations of leniency, which were allegedly made to him by the agent and AUSA Reilly. None of these statements, however, were inaccurate representations at the time they were made. Both the agent and the AUSA stated only that if Mejias cooperated, they would make a recommendation to the sentencing judge that Mejias receive leniency. While the AUSA allegedly stated that there was a high likelihood that the judge would follow such a recommendation, the agent stated clearly on the recording that he could not make any specific promises that cooperation would lessen Mejias' sentence. At oral argument, the defense conceded that at the time of this conversation between Mejias and the government, Mejias

5

understood that cooperation would entail more proactive measures than simply giving a statement on that one occasion, and that all parties to the conversation believed in good faith that Mejias' cooperation would be successful. The Court therefore finds that there were no material misrepresentations or other undue pressures placed on Mejias that could have rendered his statements involuntary.

Moreover, the defendant does not allege any additional facts that, when considered in light of the totality of the circumstances, could warrant a finding of improper coercion. Mejias is 38 years old and has prior familiarity with the criminal justice system. He makes no claim that the physical environment of the conference room was intimidating, or that the agent threatened or badgered him in any way. He admits that he was properly administered his Miranda warnings, and that he signed a waiver form before making any incriminating statements. He does not argue that he did not understand the rights he was waiving in signing the form, and the agent told him expressly that he could stop the interview at any time if he wanted a lawyer present.

Based on the totality of the circumstances, the Court concludes that the motion to suppress should be denied and that no suppression hearing is necessary.

SO ORDERED.

Dated: Brooklyn, New York
October 25, 2011

s/CBA

Carol Bagley Amon
Chief United States District Judge